J. JOSEPH CURRAN, JR.
Attorney General



NORMAN E. PARKER, JR.
CARMEN M. SHEPARD
Deputy Attorneys General

(410) 576-7003

TELECOPIER NO.

## STATE OF MARYLAND
## OFFICE OF THE ATTORNEY GENERAL

(410) 576-6327

WRITER'S DIRECT DIAL NO.

November 22, 1996

Mr. Ronald W. Wineholt
Director
State Department of Assessments & Taxation
301 West Preston Street
Room 903
Baltimore, Maryland 21201-2395

Dear Mr. Wineholt:

We are writing to advise you of this office's conclusion about MARTA's tax liability for the property used as VEIP's testing stations. After extensive discussions, we have concluded that MARTA is not liable for the tax.

Everyone agrees that MARTA's interest in the State-owned property constituting the VEIP stations is taxable only if Tax-Property §6-102(e) applies, for the property itself is exempt from taxation under §7-210. Everyone also agrees that MARTA is not entitled to any constitutionally derived tax immunity for its interest in the property. For the reasons discussed in Jeff Comen's memorandum of January 23, 1995, the General Assembly could constitutionally tax the interest. The question is whether it has done so.

In construing TP §6-102(e), like any other statute, "our governing principle must the Legislature's intent because ... the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose." *Armstead v. State*, 342 Md. 38, 56 (1996). "In reading the [statutory] language, we apply common sense to avoid illogical or unreasonable constructions ...." *Id*. We also must recognize that "the meanings of even common words may be context-dependent ...." *Id*.

MARTA's right to use State property is taxable if MARTA has a "privilege to use the property in connection with a business that is conducted for profit." This language is essentially unchanged from the predecessor statute, Chapter 884 of the Laws of Maryland 1961, which subjected to taxation the interest of a private party in government property made available "with the privilege to use or possess such property in connection with a business conducted for profit ...."

What, in 1961, was the General Assembly's objective in imposing property tax on a private entity's use of government property "in connection with a business conducted for profit"? What was the context that informs this language and, hence, the underlying legislative objective? Chapter 884, we know, was intended to reverse the result in *Martin Co. v. State Tax Comm'n*, 225 Md. 404 (1961). The *Martin* case itself tells us that bill "deal[t] with the subject matter here involved ...." 225 Md. at 421. That "subject matter" involved a wholly discretionary decision by the federal government to buy armaments. Despite its general obligation to provide for the national defense, the federal government was not legally required to buy the type of products that it contracted with Martin to make. It had no legal duty to supervise Martin's process of manufacture (though Martin was of course obliged to adhere to military secrecy requirements, and the products no doubt had to meet contractual specifications). Martin, for its part, could run this aspect of its business as it saw fit (again, in conformity with secrecy requirements). In short, despite the specialized nature of the products, the principal characteristics of the transaction mirrored those engaged in by other "businesses conducted for profit." A tax exemption for *Martin* gave it an unfair advantage over other companies operating in a market environment. Chapter 884 removed this unfair competitive advantage.

Chapter 884 did not, in our view, reflect a much broader legislative objective of rendering taxable *every* profit-making endeavor in which government property is occupied, regardless of how removed from the subject matter of the *Martin* case a different factual pattern might be. In particular, we do not think it reasonable to ascribe to the General Assembly the intention of addressing decisions by State agencies to contract out the rendering of uniquely governmental on-site services. MARTA is not using State property to sell services that MVA has discretion to buy or not buy or to conduct an activity that has a counterpart in the commercial marketplace. Rather, MVA is under a legal obligation to carry out the VEIP program, a uniquely governmental endeavor. MVA "shall establish an emissions control program in the State in accordance with the federal Clean Air Act." §23-202(a)(1) of the Transportation Article. MVA could do so through its own staff or by engaging a contractor.

It is most unlikely, in our view, that the General Assembly intended, in 1961, to burden the latter choice by imposing tax-related costs that would not be borne by the agency were it to carry out its legal mandate with its own employees. Legislative policymaking on the subject of service contracts to perform State functions is reflected in a different part of the law. *See* Title 12, Subtitle 4 of the State Personnel and Pensions Article.

In short, we do not construe the phrase "privilege to use the property in connection with a business conducted for profit" to refer to an activity that: (i) is carried out on State property pursuant to a State agency's legal obligation, where certain results of the activity must be achieved if legal obligations are to be met; (ii) is under the ultimate control of government officials who are directly responsible for ensuring that the activity satisfies the legal obligation; and (iii) because

of the agency's legal obligations, cannot be left to the discretion of the contractor as to the manner of performance.

Because MARTA's activities under the VEIP program fit these criteria, its interest in the property is not taxable under §6-102(e). This interpretation of §6-102(e), we might add, better accounts for your agency's conclusion regarding the Hickey School than legally immaterial facts about the composition of the line work-force at the facility.

We hope that this letter of advice, although not an opinion of the Attorney General, is fully responsive to your inquiry. Please let us know if we may be of further assistance.

Very truly yours,

Norman E. Parker, Jr.
Deputy Attorney General

Jack Schwartz
Chief Counsel
Opinions and Advice

KMI:1003